IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRIS MCWATERS, *et al.*,           )
                                    )
      Plaintiffs,                )
                                    )
v.                                  )     CASE NO.  2:21-cv-57-RAH-SMD
                                    )                [WO]
RANDALL HOUSTON, *et al.*,          )
                                    )
      Defendants.                )

## MEMORANDUM OPINION AND ORDER

In this 42 U.S.C. § 1983 action, Plaintiffs Chris McWaters; his wife, Daisy McWaters; and his father, Jeff McWaters (collectively "the McWaters") bring claims arising from rape allegations made against Chris McWaters by P.B., a minor. Chris McWaters alleges that P.B.'s allegations resulted in his arrest and led to the publication of accusations about the McWaters family on social media websites.

The McWaters name as defendants: Randall Houston, the District Attorney for Elmore County, Alabama; Michael Dozier, the Clerk of Court of the Elmore County Circuit Clerk's Office; Bill Franklin, the Elmore County Sheriff; James Talley, an investigator with the Elmore County Sheriff's Office (ECSO); along with P.B.; her father, Eric Bruner, an investigator with the ECSO; her mother, April Bruner Webster; her uncle, Adam Bruner; her aunt, Ann Marie Bruner; and Facebook, Inc.

The Amended Complaint (Doc. 90) asserts twenty-five claims for relief, including, among others, federal claims alleging violations of Chris McWaters's civil rights, and state law claims alleging malicious prosecution and defamation. The Amended Complaint has drawn motions to dismiss from each defendant except Mary Thrower, whose name appears only in the document's caption.[1] (*See* Docs. 92, 93, 94, 95, 97, 98, 100.) The Amended Complaint is the McWaters' second attempt at stating plausible claims for relief.[2]

After reviewing the Amended Complaint, the motions to dismiss, and the responses thereto, the Court concludes that the motions are due to be granted in part and denied in part as discussed below.[3]

## I.   MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8 of the Federal Rules of Civil Procedure,

---

[1] Aside from its caption, the Amended Complaint makes no further mention of Thrower and alleges no claims against her. She is therefore due to be dismissed as a defendant. The Amended Complaint also fails to allege causes of action against Ann Marie Bruner, April Bruner Webster, and P.B., and thus, their motions to dismiss (Docs. 93, 94, 97) are due to be granted.

[2] Since the date they filed the Amended Complaint, the McWaters have sought leave to further amend their complaint, this time to address an inadvertent omission of several state law claims against certain defendants. Because the Court chooses not to retain jurisdiction over the McWaters's state law claims unrelated to the arrest and prosecution of Chris McWaters, these motions to amend will be denied as moot. (*See* Docs. 106, 111.)

[3] The McWaters concede dismissal of the claims against Randall Houston and Michael Dozier (*see* Doc. 108), and thus, the motion to dismiss (Doc. 95) filed by these two defendants is also due to be granted. The McWaters likewise acknowledge that the claims against the ECSO are due to be dismissed (*see* Doc. 109) because a county sheriff's department "is not a legal entity and, therefore, is not subject to suit or liability under section 1983." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)*; see also White v. Birchfield*, 582 So.2d 1085, 1087 (Ala. 1991).

2

which requires: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

## II.   JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331 and may retain supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.[4]  Venue lies properly in the Middle District of Alabama.

## III.   BACKGROUND

As is appropriate at the motion-to-dismiss stage, the following facts are taken as true from the factual allegations set forth in the Amended Complaint:

On October 15, 2019, Defendant P.B. made an accusation via social media that Chris McWaters had raped her. Following this accusation, ECSO investigator James Talley obtained an arrest warrant for McWaters. (Doc. 90 at 6.)  P.B.'s father, Eric Bruner, who was also employed as an investigator with the ECSO, accompanied Talley as he obtained the warrant. (*Id.* at 7.) According to the McWaters, Eric Bruner was "involved in conversations" with Talley about the warrant's issuance and was responsible for "pushing this case to an arrest warrant without corroborating evidence." (*Id.* at 7, 10.)

After the warrant was issued, a deputy sheriff contacted Chris McWaters and told him to report to the ECSO for questioning. (*Id.* at 5.) When McWaters arrived at the ECSO, he alleges that he was interviewed and immediately arrested by Talley. (*Id.* at 6.) At the time of McWaters's arrest, Talley confiscated McWaters's cell

---

[4] The only defendant to dispute this Court's supplemental jurisdiction is Adam Bruner, who asserts that the defamation, negligence, intentional infliction of emotional distress, and outrage claims alleged against him are not so related to the federal claims to comprise the same case or controversy. (*See* Doc. 99.) Because the Court chooses not to retain jurisdiction over these claims, it does not attempt to resolve Bruner's challenge to the Court's jurisdiction.

phone and, without a search warrant, conducted a forensic dump of its contents and deleted McWaters's text messages. (*Id*. at 6–7.)

While the criminal charges against McWaters were pending, numerous individuals published statements and photos about the McWaters on Facebook. (*Id*. at 15, 17, 19, 20, 21.) For example, statements were posted on the website suggesting that physical harm should come to Chris McWaters and photos and new articles were shared alleging that he was a pedophile. (*Id*. at 15.) Other posts accused Chris and Jeff McWaters of beating their wives and Daisy McWaters of having an affair. (*Id*.)

A grand jury was convened in Elmore County to consider the criminal charges of first-degree rape and first-degree sexual abuse against Chris McWaters.  Nearly eight months later, on June 8, 2020, the grand jury returned a no-bill on all charges against McWaters.[5] (Doc. 95-2 at 27–28.) This lawsuit followed.

## IV.   DISCUSSION

The McWaters bring this suit against almost everyone involved with pursuing criminal charges against Chris McWaters and making accusations against the McWaters family in the public domain.

Unfortunately for the Court, the Amended Complaint is not a model of clarity and remains vague and confusing, even after the Court previously admonished the

---

[5] In the Amended Complaint, the McWaters omit any mention that the grand jury returned a no-bill in favor of Chris McWaters. Accordingly, the Court references it only to complete the narrative, not to decide the pending motions.

McWaters's counsel about deficiencies within the initial complaint. Nevertheless, the Court will endeavor to interpret the Complaint to the best of its ability, as the Court is doubtful that giving the McWaters a third bite at the apple would result in a more well-pleaded complaint.

## A. Official Capacity 1983 Claims against Talley, Bruner, and Franklin

Bill Franklin, James Talley, and Eric Bruner are all employed with the ECSO, with Franklin serving as the sheriff and Talley and Bruner as investigators. (Doc. 90 at 3.) Bruner is also P.B.'s (the alleged victim's) father. Chris McWaters brings § 1983 claims against Talley, Bruner, and Franklin for monetary damages in both their official and individual capacities. (Doc. 90 at 9–12, 35.) These defendants move for dismissal of the official capacity claims based on Eleventh Amendment sovereign immunity. (Doc. 101 at 2–3.)

The Eleventh Amendment of the United States Constitution provides to states absolute immunity from suit. *See Pennhurst v. State Sch. & Hosp. v. Halerman*, 465 U.S. 89, 98–100 (1984). The Eleventh Amendment likewise bars suits for money damages brought against state officials in their official capacities because those suits are, in effect, suits against the state. *Lancaster v. Monroe Cnty., Ala.,* 116 F.3d 1419, 1429 (11th Cir. 1997).[6]

---

[6] This immunity also extends to the McWaters' claims for declaratory relief. *See Green v. Mansour,* 474 U.S. 64, 73 (1985) (holding that the Eleventh Amendment barred a claim for declaratory relief because the issuance of such a judgment would have had "much the same effect as a full-fledged award of damages or restitution by the federal court"); *Summit Med. Assoc., P.C. v. Pryor,* 180 F.3d 1326, 1337 (11th Cir. 1999) (holding that the Eleventh

Here, the Amended Complaint makes clear that Franklin, Bruner, and Talley are being sued in their official capacities for monetary damages because they are employed with the ECSO and were performing law enforcement-related activities associated with Chris McWaters's arrest and the search of his cell phone. (Doc. 90 at 3, 9–12.) Accordingly, these Defendants are entitled to sovereign immunity under the Eleventh Amendment as to the § 1983 claims asserted against them in their official capacities. These claims are due to be dismissed.

## B. Individual Capacity 1983 Claims against Talley, Bruner, and Franklin

### 1. Fifth Amendment Claims

In Counts 1, 2, and 3, Chris McWaters raises a Fifth Amendment due process claim against Talley, Bruner, and Franklin. (Doc. 90 at 9–12.) However, Fifth Amendment due process claims can only be asserted against federal actors. *See, e.g.*, *Rudd v. Geneva Cnty. Comm'n*, No. 1:06-CV-233-WKW, 2008 WL 5273115, at *8 (M.D. Ala. Dec. 18, 2008); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1335 (M.D. Ala. 2007) (citing *Riley v. Camp*, 130 F.3d 958, 972 n. 19 (11th Cir. 1997)). These three defendants are not federal actors. Indeed, the McWaters have made no such allegation. The Fifth Amendment claims against Talley, Bruner, and Franklin are due to be dismissed.

---

Amendment barred the plaintiff's request for declaratory relief because a plaintiff may not seek to adjudicate the legality of past conduct by the state).

### 2.  Fourth Amendment Claims against Talley, Bruner and Franklin

In Counts 1, 2, and 3, Chris McWaters asserts § 1983 claims against Talley, Bruner and Franklin based on alleged Fourth Amendment search and seizure violations during McWaters's arrest and the subsequent search of his cell phone. (Doc. 90 at 9–10.) These defendants seek dismissal of these claims based on qualified immunity. (Doc. 101 at 3–12.)

### a.  Qualified Immunity

Although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the "complaint fails to allege the violation of a clearly established constitutional right." *Id.  See also Quiller v. Barclays Am./Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd en banc* 764 F.2d 1400 (11th Cir. 1985).

Qualified immunity protects government officials from suit unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant "asserting that he is entitled to the protection of qualified immunity must initially establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Once the defendant has made this

showing, the burden shifts to the plaintiff" to show that qualified immunity is not appropriate. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) (internal citations omitted).

In applying each prong of this test, the court should "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266. Allegedly unlawful intent is irrelevant. *Plotkin v. United States*, 465 F. App'x 828, 831–32 (11th Cir. 2012) ("In determining whether a defendant performed a discretionary function, our inquiry is not whether the act complained of was done for an improper purpose . . . ."). Instead "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (internal quotation marks and citations omitted).

Once a defendant has proven that he was acting within his discretionary authority, the burden shifts to the plaintiff, who must make two showings. The plaintiff must "establish that the defendant violated a constitutional right" and that the right violated was "clearly established" by law.[7] *Griffin Indus., Inc.*, 496 F.3d at

---

[7] Courts may consider these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which

1199 (internal citations omitted).   In considering whether a right is "clearly established," relevant law "consists of holdings of the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state." *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). Guided by this analysis, the Court now considers the defendants' claims of qualified immunity.

### b. Fourth Amendment Claims Against Talley

In Count 1, McWaters asserts Fourth Amendment violation claims against Talley based on McWaters's right to be free from unreasonable search and seizure during his arrest and the warrantless search of his cellular phone. The Court addresses each alleged Fourth Amendment violation in turn.

### i. Chris McWaters's Arrest

In his response to Talley's motion to dismiss, McWaters contests that Talley was acting in his discretionary authority during McWaters's arrest. (Doc. 109 at 2–4.) Although he acknowledges that Talley was "acting pursuant to [his] job responsibilities" (*Id.* at 2), McWaters alleges that Talley acted beyond the scope of that authority by allowing the alleged victim's father, Eric Bruner, to accompany Talley when he obtained the arrest warrant and by failing to first present the accusations to the Grand Jury rather than obtaining a warrant based solely on allegation of the victim. (*Id.* at 4.) These actions, McWaters asserts, resulted in a

_____

of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

violation of his clearly established constitutional rights. The Court construes Count I as allegeing a malicious prosecution claim. *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (holding that the issuance of a warrant constitutes legal process, thus where an individual is arrested pursuant to a warrant, his claim is for malicious prosecution).

Talley counters that, not only was he acting within his discretionary authority when seeking an arrest warrant, but that McWaters has failed to plausibly allege a violation of his Fourth Amendment rights because the facts alleged in the Amended Complaint demonstrate that Talley had probable cause to seek a warrant for McWaters's arrest and because Talley was entitled to rely on the victim's uncorroborated statement. (Doc. 101 at 10–12.)

## A. Discretionary Authority

The Court first finds that the allegations in the Amended Complaint sufficiently demonstrate that Talley was acting in his discretionary authority when he sought a warrant for McWaters's arrest. In making its determination regarding a defendant's discretionary authority, a court should assess whether the official's alleged conduct falls within his job responsibilities. *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004). A court should ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* (internal citation

omitted).

Here, the Amended Complaint alleges that Talley, in his capacity as an investigator for the ECSO, sought and obtained a warrant for McWaters's arrest based on rape allegations made by P.B. (Doc. 90 at 3, 5–6.) Securing an arrest warrant in response to reported criminal activity is a job-related function within a law enforcement officer's discretionary authority. *Carter*, 557 F. App'x at 907.

Because the Amended Complaint demonstrates Talley was acting within his discretionary authority, the burden now shifts to McWaters to prove that his complaint adequately demonstrates a violation of his clearly established constitutional rights.

### B. Constitutional Violation

To prevail on a Fourth Amendment challenge to a search and seizure pursuant to an arrest, McWaters's Amended Complaint must sufficiently allege that the legal process justifying the seizure—here, the arrest warrant for rape—was constitutionally infirm. *See Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020). An arrest warrant is constitutionally infirm if either an officer who applied for the warrant should have known that his application for the warrant failed to establish probable cause, *see Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016); *Kelly v. Curtis*, 21 F.3d 1544, 1553 (11th Cir. 1994); *Garmon v. Lumpkin Cnty.*, 878 F.2d 1406, 1409–10 (11th Cir. 1989); or an official, including an

individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant, *see Paez v. Mulvey*, 915 F.3d 1276, 1283, 1287, 1291 (11th Cir. 2019); *Black*, 811 F.3d at 1263–64, 1267; *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003); *Kelly*, 21 F.3d at 1554–55.

For probable cause to exist, an arrest must be objectively reasonable under the totality of the circumstances. *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). This standard is met when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills,* 65 F.3d 155, 158 (11th Cir. 1995). When probable cause exists, there can be no Fourth Amendment violation, and therefore an arresting officer has qualified immunity and is protected from suit. *See, e.g.*, *Angeline v. City of Hoover*, 352 F. App'x 332, 334 (11th Cir. 2009) (per curiam) (holding district court properly concluded officers were entitled to qualified immunity because there was no violation of Angeline's constitutional rights when arrested for driving under the influence); *Reynolds v. Sellars*, No. 7:17-CV-188 (WLS), 2020 WL 5797766, at *7 (M.D. Ga. Aug. 31, 2020) ("Because Plaintiffs have produced no evidence of a constitutional violation, Sellars is entitled to qualified immunity on these claims.").

Here, the Amended Complaint alleges that probable cause did not exist to support McWaters's arrest because: P.B's rape accusation was not independently verified or corroborated by other facts or sources before the arrest warrant was sought (Doc. 90 at 7); Talley did not follow customary internal procedures in that he did not first present the allegation to a grand jury (*id*. at 9); and Bruner had a conflict of interest because he was P.B.'s father, and therefore the ECSO and Talley had a conflict as well and should not have handled the case (*id*. at 11).

Of these, McWaters's primary allegation is that law enforcement should not have acted based solely on the accusations of the victim, who was a teenager. As the Amended Complaint repeatedly asserts, there was "no corroborating evidence," only the "allegations of the victim." (*Id.* at 9, 11–12.)

Despite McWaters's contentions, it "is well established that police officers may generally rely on eyewitness accounts and victim statements to establish probable cause." *Bright v. Thomas*, 754 F. App'x 783, 787 (11th Cir. 2018) (per curiam); *see also Myers v. Bowman*, 713 F.3d 1319, 1323, 1326–27 (11th Cir. 2013) (holding a theft victim's complaint sufficient to establish probable cause); *Jordan v. Mosley*, 487 F.3d 1350, 1353, 1355 (11th Cir. 2007) (holding that eyewitness statements led an objectively reasonable officer to believe the plaintiff committed a crime); *Rankin*, 133 F.3d at 1441 ("Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause.").

That the victim here is a minor does not lessen the significance or reliability of her statement. *See Rankin*, 133 F.3d at 1429–30, 1437 (holding that sufficient facts to establish probable cause existed despite inconsistencies in the four-year-old victim's statements); *Lowe v. Aldridge,* 958 F.2d 1565, 1571 (11th Cir. 1992) ("There is no basis for holding that police officers cannot depend on the uncorroborated evidence of a child victim of sexual abuse for the request for a warrant.").

The Amended Complaint makes clear that P.B., a teenager at the time, was the alleged victim and the sole eyewitness. Chris McWaters denies a rape occurred and disputes P.B.'s account of the events leading up to her allegation. (Doc. 90 at 5–6.) "However, a law enforcement officer is under no obligation to believe a suspect's story and forgo an arrest when the information []he initially received provided probable cause to believe that the suspect had committed or was committing a crime." *Watkins v. Broward Sheriff Off.*, 824 F. App'x 865, 868–69 (11th Cir. 2020); *see also Marx v. Gumbinner*, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990) ("Defendants also were not required to forego arresting [the plaintiff] based on initially discovered facts showing probable cause simply because [the plaintiff] offered a different explanation."). And the fact that the accused and the alleged victim provided conflicting accounts about the night in question did not make Talley's belief that Chris McWaters committed rape objectively unreasonable because the word of an

eyewitness and victim is generally sufficient to establish probable cause. *Thomas*, 754 F. App'x at 787; *Myers*, 713 F.3d at 1323, 1326–27; *Jordan*, 487 F.3d at 1353, 1355; *Rankin*, 133 F.3d at 1441.

Moreover, McWaters does not allege any independently known facts by Talley at the time he obtained the warrant that would have rendered Talley's belief that McWaters committed the rape objectively unreasonable. McWaters only alleges Talley learned McWaters's version of the story *after* the arrest warrant had been obtained. *See Doe v. Leach*, 829 F. App'x 419, 422–25 (11th Cir. 2020) (per curiam) (denying a motion to dismiss a malicious prosecution claim where the arresting officer knew of reasonably trustworthy information from independent sources that cast doubt on the alleged victim's story when the officer obtained the warrant).

Nor does Chris McWaters allege that there were any material omissions in the application for the warrant filed by Talley. Instead, the Amended Complaint acknowledges that the warrant contained the substance of P.B.'s rape accusations. (Doc. 90 at 6.) In essence, McWaters asserts that the accusations should have been viewed with a skeptical eye because they came from a teenager. But again, McWaters provides no legal support for this assertion, let alone how that fact demonstrates a lack of probable cause. McWaters likewise makes no allegations that anyone involved intentionally or recklessly made misstatements or omissions necessary to support the warrant. *See Paez*, 915 F.3d at 1291.

16

Additionally, McWaters's assertion that the ECSO should not have been involved in this case due to a conflict of interest also does not demonstrate a lack of probable cause. The United States Supreme Court has long held that, for Fourth Amendment purposes, an officer's subjective intent is immaterial; instead, the facts must be considered objectively. *See Whren v. United States,* 517 U.S. 806, 813 (1996); *Rankin*, 133 F.3d at 1434. Here, the warrant was obtained based on the statements and accusations of P.B.; statements the Amended Complaint does not allege were mischaracterized by Talley when the warrant was procured. The fact that the ECSO may have had a conflict of interest, or the appearance of one, because the victim was the daughter of one of its investigators raises an issue of *subjective* intent and is therefore immaterial for purposes of determining whether P.B.'s accusations, viewed objectively, gave Talley probable cause to secure the arrest warrant. *See Whren*, 517 U.S. at 813; *Rankin*, 133 F.3d at 1434.

Equally unimpressive is McWaters's argument that law enforcement failed to follow internal policies when they did not perform an independent investigation and present P.B.'s accusations to a grand jury before making the arrest. *See United States v. Williams*, No. 6:08-CR-190-ORL-22GJ, 2008 WL 5398032, at *9 (M.D. Fla. Dec. 24, 2008) (finding probable cause existed even where standard police procedure was not followed as it concerned the presence of an undercover officer at the residence to purchase drugs). This is so because, again, the probable cause inquiry is

objectively-based, and an exhaustive, resource-intensive, or perfect investigation is not required.  *See Washington v. Rivera*, 939 F.3d 1239, 1249 (11th Cir. 2019) ("We cannot say that a review of the case law would have indicated to [the officer] that the Constitution required *further* investigation to confirm that the evidence she possessed was accurate."); *Rankin*, 133 F.3d  at 1435–37 (finding probable cause existed based on the word of a child victim of sex abuse even when the reporting witness had motive to fabricate and bias against plaintiff, there was a failure to investigate the scene of abuse, and there was a failure to interview others regarding the child victim's behavior); *Mills v. Town of Davie,* 48 F. Supp. 2d 1378, 1382 (S.D. Fla. 1999) (finding probable cause existed and stating "Plaintiff has offered no case law to support the proposition that the officers should not have arrested Plaintiff until they had investigated critical inconsistencies.").

All told, the facts as pleaded in the Amended Complaint do not support a plausible inference that Talley violated McWaters's constitutional right; that is, the arrest of Chris McWaters without probable cause.[8] *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137, 1143–45 (11th Cir. 2007). The Amended Complaint alleges facts sufficient to demonstrate that the information known to Talley at the time he obtained the warrant and arrested McWaters would have led a reasonable officer to believe McWaters had committed the crimes of rape and sexual abuse. The Fourth

---

[8] Because the Amended Complaint does not allege facts sufficient for this Court to find a constitutional violation occurred, the Court does not address whether the right alleged to have been violated was clearly established.

Amendment claim against Talley regarding McWaters's arrest is due to be dismissed due to the application of qualified immunity.

### ii.   The Search of Chris McWaters's Cell Phone

Count I of the Amended Complaint also asserts that Talley's warrantless search of McWaters's cellular phone constituted a Fourth Amendment violation. (Doc. 90 at 10.) Talley does not move to dismiss or otherwise respond to this allegation. (*See* Doc. 101.) For this reason alone, the claim will proceed forward.

But even if it Talley had challenged this claim in his motion to dismiss, the motion would be denied. The United States Supreme Court has conclusively determined that warrantless searches of cell phones are unconstitutional. *See Riley v. California*, 573 U.S. 373, 386 (2014) (holding the police may not search digital information on a cellphone seized from an arrested individual without a warrant)*; see also United States v. Gadd*, No. 1:14-CR-291-8-SCJ-JSA, 2016 WL 11628076, at *5 (N.D. Ga. Feb. 19, 2016) ("when the police seize a cellular phone incident-to-arrest, they must obtain a warrant before searching the electronic contents"); *Smith v. Fargo*, No. 3:13-CV-638, 2015 WL 6125709 (E.D. Va. 2015) (plaintiff adequately alleged a Fourth Amendment claim of an illegal search of his cell phone without a warrant).

The Amended Complaint alleges that Talley confiscated McWaters's cell phone, deleted his text messages concerning P.B.'s allegation, and performed a

forensic "dump" of the phone, all without obtaining a search warrant. (Doc. 90 at 6–7.) The warrantless search of McWaters's cell phone took place well after the Supreme Court's *Riley* decision. This claim will not be dismissed.

### 3. Fourth Amendment Claim Against Eric Bruner

Count 2 of the Amended Complaint alleges that Eric Bruner violated McWaters's Fourth Amendment rights. McWaters does not clearly state how Bruner violated the Fourth Amendment, but the crux of Count 2 appears to be that Bruner improperly influenced Talley's actions in obtaining the arrest warrant because Bruner, as P.B.'s father, had a conflict of interest. (Doc. 90 at 10–11.) McWaters also alleges that Bruner knew that his daughter had made false allegations against another individual in the past, yet he accompanied Talley to the Elmore County Clerk's Office to obtain the arrest warrant. (Doc. 90 at 10.) Bruner asserts the defense of qualified immunity.

### i. Discretionary Authority

The Court finds that Bruner was acting in his discretionary authority when he accompanied Talley to secure the arrest warrant for McWaters. In making this determination, the Court assesses whether Bruner's alleged conduct fell within his job responsibilities. *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004). Putting aside his relationship with the victim and any bias Bruner may have had, his accompanying a fellow officer to obtain a search warrant is a legitimate job-related

function through means within his power to utilize. The burden now shifts to McWaters to sufficiently allege a violation of an established constitutional right.

## ii. Constitutional Violation

As it did with Count 1, the Court will construe Count 2 as a Fourth Amendment malicious prosecution claim. *See Carter*, 557 F. App'x at 906. To prevail on this claim, McWaters must sufficiently allege that the arrest warrant at issue was constitutionally infirm and that his seizure was not otherwise justified. McWaters can sufficiently allege that his arrest warrant was constitutionally infirm if he pleads facts showing either that the officer who applied for the warrant should have known his warrant application failed to establish probable cause, or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant. *See Paez*, 915 F.3d at 1287.

The Amended Complaint does not allege that Bruner applied for the warrant. Instead, McWaters's theory appears to be that Bruner improperly influenced Talley's procurement of the warrant through a conflict of interest or because Bruner was aware of a previous false allegation made by P.B. (Doc. 90 at 5–6.)

The flaw with McWaters's factual pleading of this claim is several-fold. First, other than a conclusory statement, he fails to allege what Bruner did to improperly influence Talley in securing the arrest warrant. This pleading deficiency was

highlighted by the Court when it conducted a hearing on the Defendants' motions to dismiss the original complaint. (*See* Doc. 89.)  This deficiency was not corrected in the Amended Complaint

That Bruner was P.B.'s father, and that he is alleged to have been present when the arrest warrant was obtained, are not allegations sufficient to show how Bruner improperly influenced Talley, especially when the arrest warrant was issued based on the allegations made by P.B. and not based on any allegedly false statements or fabricated evidence provided by Bruner. *See Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) (per curiam) (noting that police officers were not the legal cause of the original proceedings when they had not improperly influenced the decision to prosecute).

McWaters also vaguely references a false rape allegation made by P.B. in the past. This assertion does not sufficiently satisfy McWaters's burden to show that Bruner intentionally or recklessly made misstatements or omissions necessary to support the warrant. *See Paez*, 915 F.3d at 1287.

McWaters also does not set forth well-plead allegations to support his claim that Bruner "push[ed] this case to an arrest warrant without corroborating evidence." (Doc. 90 at 10.)  This conclusory assertion again operates on the erroneous premise that Talley, Bruner, and other law enforcement officers, were legally required to obtain corroborating evidence and to make a direct presentation to a grand jury

before seeking an arrest warrant. But McWaters provides no legal or factual support for these assertions.

His speculative and conclusory allegations, without more, are insufficient to support a Fourth Amendment claim against Bruner, especially when Bruner did not apply for or sign the arrest warrant. *See Eubanks v. Gerwen,* 40 F.3d 1157, 1160–61 (11th Cir. 1994) (holding that defendant police officers were not the legal cause of the original proceeding where there was no evidence that they had anything to do with the decision to prosecute or that they had "improperly influenced" that decision); *Bonuso v. Blackman*, No. 2:19-CV-14343, 2019 WL 6828149, at *4 (S.D. Fla. Dec. 13, 2019) (finding complaint insufficient where it failed to describe defendant's role while only alleging a conflict of interest and subsequent probable cause failure); *Harris v. Johnson's Giant Foods, Inc.*, No. 2:16-CV-01646-RDP, 2017 WL 6336330 (N.D. Ala. Dec. 12, 2017) (dismissing malicious prosecution claim where defendant did not apply for warrant and where there was no claim that the magistrate relied upon his input in finding probable cause).

In short, McWaters does not plead facts sufficient to show that the process for obtaining the warrant, or the warrant itself, was constitutionally infirm. McWaters has not satisfied his burden to demonstrate a violation of his clearly established

Fourth Amendment rights.[9] Therefore, the § 1983 claim in Count 2 against Bruner is due to be dismissed.

### 4. Fourth Amendment Claim Against Franklin

In Count 3, McWaters appears to assert a § 1983 supervisory claim against Franklin, alleging that his "rights were violated when Franklin failed to properly supervise his investigators." (Doc. 90 at 11.) Franklin moves to dismiss this claim as failing to state a claim upon which relief can be granted. (Doc. 101 at 6–7.) Based on the facts as pleaded in the Amended Complaint, Franklin is correct.

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999) (cleaned up). Absent personal participation, a plaintiff "must allege a causal connection between actions of the supervising official and the alleged constitutional deprivation, such as a history of widespread abuse that put the supervisor on notice of constitutional violations or a custom or policy of the supervisor that results in the constitutional violation." *Watson v. Lockette,* 379 F. App'x 822, 826 (11th Cir. 2010) (cleaned up).

McWaters pleads no facts alleging Franklin's direct involvement in the procurement or execution of the arrest warrant. There are likewise no allegations of

---

[9] Because the Court does not find a sufficiently-pled constitutional violation here, it does not discuss the clearly established prong.

any prior unlawful acts by Talley that should have put Franklin on notice that Talley may break the law. Nor is there any allegation, for example, that Franklin, as sheriff, had a custom or policy of permitting arrests without probable cause.

Instead, McWaters's allegations largely mimic those against Talley and Bruner in that Franklin should be liable because Franklin allowed Talley to arrest McWaters without a full investigation, without corroborating evidence, without a direct presentation to the grand jury, and when Bruner had a conflict of interest. (Doc. 90 at 11–12.) These factual allegations do not allege the type of causal connection necessary for a § 1983 to proceed against Franklin as the supervisor of Talley and Bruner. *See Hartley*, 193 F.3d at 1269; *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991). Count 3 of the Amended Complaint is due to be dismissed.

### C. Chris McWaters's RICO Claim

Count 24 of the Amended Complaint is a claim entitled "Conspiracy, Civil RICO." (Doc. 90 at 33.) Defendants move to dismiss this claim based on McWaters's failure to adequately plead this claim. (Doc. 101 at 16.) The Court agrees that it should be dismissed.

 Other than labeling this count as a "RICO" claim, the Amended Complaint does not remotely attempt to properly plead a claim under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-1968. As previously noted, this is the second attempt by Chris McWaters to plead a federal RICO claim.

The Court specifically warned McWaters that his first attempt was grossly insufficient. As the Court previously ordered, McWaters should "[r]eplead the RICO claim (Count 7) in a manner consistent with federal pleading practices." (Doc. 89 at 3.)

The root of McWaters's pleading deficiency likely stems from his belief that a RICO claim is merely the federal counterpart to a common law conspiracy claim. It is not. RICO claims must be pleaded with particularity. *See Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1316 (11th Cir. 2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)). To adequately state a RICO claim, a plaintiff must plead facts showing that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

Here, Chris McWaters fails to allege any of these elements.  He does not allege any facts showing that the Defendants operated or managed an enterprise. Nor does he allege any facts showing a pattern of racketeering activity, much less two predicate acts causing injury to him. This RICO claim is woefully deficient and therefore is due to be dismissed. *See, e.g.*, *Cisneros*, 972 F.3d at 1208 ("Cisneros has

failed to allege with particularity that each defendant engaged in a pattern of racketeering activity."); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) (affirming dismissal of a RICO complaint for failure to allege a common purpose).

### D. The Discriminatory Practices Claim against Facebook

Count 25 purports to be a federal claim against Facebook, this time masquerading as a Fourteenth Amendment equal protection claim due to Facebook's allegedly discriminatory enforcement of its community standards. (Doc. 90 at 34–35.) Facebook moves to dismiss this count for a variety of reasons. (*See* Doc. 92.) Of these reasons, the Court will address the most straightforward—the state actor requirement. (Doc. 92 at 5.)

The Fourteenth Amendment does "not apply to private parties unless those parties are engaged in an activity deemed to be state action." *Farese v. Scherer,* 342 F.3d 1223, 1233 n.13 (11th Cir. 2003) (per curiam) (cleaned up). The Amended Complaint identifies Facebook as a private corporation organized and existing under the laws of the State of Delaware. (Doc. 90 at 4.) No allegation is made that it is a public actor or that it is a private business engaged in activity deemed to be state action.

And further, Facebook, as a social media company, does not become a state actor based solely on the availability of its social media network to the public, even

27

if Facebook is alleged to have discriminatorily regulated speech on its forum. *See,
e.g.*, *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *6
(N.D. Cal. May 9, 2019) (rejecting the argument that Facebook was a state actor
because it allegedly regulated speech in a public forum); *Nyabwa v. Facebook*, No.
2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) (finding that the
plaintiff had failed to state a First Amendment claim because Facebook was not the
government); *Shulman v. Facebook.com*, No. CV 17-764 (JMV), 2017 WL
5129885, at *4 (D.N.J. Nov. 6, 2017) (rejecting the plaintiff's constitutional claims
against Facebook because Facebook was not a state actor); *see also Howard v. Am.
Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (finding no subject-matter jurisdiction
for a § 1983 claim because AOL was not a state actor, even if it allegedly acted as a
"quasi-public utility" that involves "a public trust"); *Kinderstart.com LLC v. Google,
Inc.*, No. C06-2057 JFRS, 2007 WL 831806, at *13–15 (N.D. Cal. Mar. 16, 2007)
(rejecting arguments that Google was a state actor for constitutional claims);
*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631–32 (D. Del. 2007) (ruling that
Google is a private entity not subject to the plaintiff's constitutional claims); *Cyber
Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 442 (E.D. Pa. 1996)
(concluding that AOL "does not stand in the shoes of the State").

Simply put, no matter how discriminatory Facebook's actions are alleged to
be in policing the content of its forum posts, Facebook nevertheless is a private entity

and does not engage in state action. As a result, the Fourteenth Amendment provides no recourse to McWaters, and therefore Facebook's motion to dismiss Count 25 is due to be granted.

## E. State Law Claims

### 1. State Law Claims Related to Chris McWaters's Arrest

The state law claims for malicious prosecution (Counts 22 and 23), outrage/intentional infliction of emotional distress (Counts 9 and 11) against Talley, Bruner, and Franklin, negligence against Talley (Count 13), negligent supervision against Franklin (Count 14), and violation of Alabama's Ethics Laws (Counts 17-21) all pertain to the arrest and prosecution of Chris McWaters. These claims are based on the same course of conduct by the same Defendants as the federal claims and deciding them involves no substantive entanglement with state law. Thus, the Court will exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(a). The Court addresses each claim in turn.

#### a. Malicious Prosecution

The state law claims for malicious prosecution (Counts 22 and 23) involve the same course of conduct and, generally, the same legal principles as the federal claims. The Court already has concluded these federal claims are due to be dismissed because McWaters was arrested pursuant to a warrant supported by probable cause.

As with the federal malicious prosecution claims, McWaters's failure to plead sufficient facts showing a lack of probable cause is fatal to his state law claims for malicious prosecution. Therefore, Counts 22 and 23 are due to be dismissed. *See, e.g.*, *Ex parte Harris*, 216 So. 3d 1201, 1215 (Ala. 2016) (holding that plaintiffs must prove lack of probable cause to succeed on Alabama malicious prosecution claim). *See also Wright v. Watson* 739 F. App'x 981, 983 (11th Cir. 2018) (per curiam) (affirming dismissal of federal and state malicious prosecution claims because there was probable cause to make arrest).

### b.  Outrage and IIED

Likewise, the claims of Outrage and Intentional Infliction of Emotional Distress (IIED) (Counts 9 and 11) relate to Chris McWaters's arrest, which he alleges was without probable cause and without a full investigation. (Doc. 90 at 18–21.) These claims are due to be dismissed.

Under Alabama law, the tort of "outrage" is legally synonymous with the tort of intentional infliction of emotional distress. *See, e.g.*, *Ex Parte Lumbermen's Underwriting All.,* 662 So. 2d 1133, 1134 (Ala. 1995) (recognizing that intentional infliction of emotional distress is "otherwise known as the tort of outrage"); *see also Sphere Drake Ins., P.L.C. v. Shoney's, Inc.,* 923 F. Supp. 1481, 1491 (M.D. Ala. 1996) (stating that, under Alabama law, the tort of outrage and the intentional infliction of emotional distress are "the same cause of action"). This tort requires

actions "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *Von Stein v. Brescher*, 904 F.2d 572, 584 (11th Cir. 1990).

Here, McWaters does not explain how a lawful arrest, or even an allegedly unconstitutional one, constitutes conduct "so outrageous as to be beyond all bounds of decency." *Andrews v. Marshall*, No. 2-16-CV-814-FTM-99MRM, 2019 WL 11638833, at *8 (M.D. Fla. May 8, 2019), *aff'd*, 845 F. App'x 849 (11th Cir. 2021).

Even the allegedly unlawful search of McWaters's cell phone is nowhere close to sufficiently outrageous to support his claims of outrage and IIED. While an unlawful search may invade McWaters's privacy, the allegations in the Amended Complaint are not sufficiently extreme and outrageous to "go beyond all possible bounds of decency." *See Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (11th Cir. 2011) (finding no outrageous conduct where a police officer entered plaintiff's home without exigent circumstances or probable cause and arrested the plaintiff, who was wearing only a towel).

Even a cursory review of outrage cases reveals the conduct must be the type to make someone do a double-take. For instance, in *Rubio v. Lopez*, after arresting a defendant, officers forced him down onto hot asphalt and hogtied him, leading to second-degree burns on his face and chest. 445 F. App'x 170, 172–73 (11th Cir. 2011) (per curiam). Yet, the Eleventh Circuit held the conduct was not outrageous.

*Id.* at 175. The conduct alleged here by McWaters is far less shocking. His outrage and IIED claims are due to be dismissed.

### c.  Negligence and Negligent Supervision

The state law claim for negligence against Talley (Count 13) is based on the same course of conduct as that made the basis of Count 1; that is, Talley's actions in obtaining an arrest warrant. (Doc. 90 at 22.) Although the claim is tagged as negligence, the substance of his allegation is a wrongful prosecution based on negligence. This claim is not actionable under Alabama law because Alabama does not recognize a claim for negligent prosecution. *See Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 833 (Ala. 1999) (finding proof of more than simple negligence is necessary to support an inference of malice in actions alleging malicious prosecution). Therefore, the negligence claim based on McWaters's arrest is due to be dismissed.

The state law claim for negligent supervision against Franklin (Count 14) fares no better because Franklin cannot be negligent as a supervisor when McWaters fails to show that Franklin's subordinates acted without probable cause. *See, e.g.*, *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001) (holding that claim of negligent supervision requires incompetency of an employee known by the supervisor). In other words, supervisory liability requires an underlying tort by the subordinate, which McWaters has failed to show.  *Smith v.*

*Boyd Bros. Transp., Inc.,* 406 F. Supp. 2d 1238, 1248 (M.D. Ala. 2005) ("Under Alabama law, the finding of underlying tortious conduct is a precondition to invoking successful[] liability for the negligent or wanton training and supervision of an employee."). There being no surviving underlying tort associated with Chris McWaters's arrest, the negligent supervision claim fails.[10]

### d.  Alabama Ethics Laws Claims

In Counts 17 through 21, Chris McWaters alleges violations of the "Alabama Ethics Laws" because, as he asserts, he was arrested without probable cause, P.B.'s accusations were not adequately investigated, and investigating authorities had a conflict of interest. (Doc. 90 at 25–31.) Although McWaters fails to identify and cite the ethics laws to which he is referring, the Court assumes, as the Defendants do, that McWaters is referring to the Alabama Ethics Act, §§ 36-25-1 to 36-25-30. (Doc. 101 at 13.)

But a violation of this Act does not give rise to a civil cause of action. Sanctions for violating the Act are *criminal* in nature, and the means of enforcing them is to either complain to law enforcement or to file a complaint with the Ethics Commission for consideration and referral for criminal prosecution. *See* Ala. Code § 36-25-27(c) (1975). And more to the point, Alabama state courts have repeatedly refused to recognize a civil cause of action under the Act. *See Hipps v. Lauderdale*

---

[10] Unlike Counts 9 and 11, Count 14 fails to include the unlawful search of Chris McWaters's cell phone as the conduct underlying the claim, so the Court does not address the warrantless search of the cell phone here.

*Cnty. Bd. of Educ.*, 631 So. 2d 1023, 1027 (Ala. Civ. App. 1993) ("We know of no cases holding that the Alabama Code of Ethics, Ala. Code 1975, §§ 36-25-1 through -30, contemplates a citizen bringing a private action against a public official for a matter falling within the purview of the Code of Ethics, nor does Hipps cite us to any authority so holding.").

There being no recognized civil cause of action for a violation of the Alabama Ethics Act, Counts 17 through 21 of the Amended Complaint fail to state a claim upon which relief can be granted and are due to be dismissed.

### 2. The Remaining State Law Claims

As it concerns the remaining state law claims in the Amended Complaint, all of which concern and relate to allegedly defamatory statements made about the McWaters, the Court declines to exercise supplemental jurisdiction.

Title 28 U.S.C. § 1367(a) gives a district court discretion to decline to exercise supplemental jurisdiction over a claim arising under state law when: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). "If, after examining the factors listed in § 1367(c), the district court decides that it has the discretion to decline to [exercise] jurisdiction,

it should consider the traditional rationales for pendent jurisdiction in deciding whether or not to exercise that jurisdiction, including judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together." *Cruz v. Winter Garden Realty, LLC,* No. 6:12–cv–1098–Orl–22KRS, 2012 WL 6212909, *3 (M.D. Fla. Nov. 27, 2012). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale,* 279 F.3d 1271, 1288 (11th Cir. 2002).

Federal courts have not hesitated to dismiss or remand state law causes of action under § 1367(c)(2) where the state law claims would require elements of proof that are distinct and foreign to the federal claims and would require a federal court to decide multiple factual issues under state law. *See Morgan v. Christensen*, 582 F. App'x 806, 808 (11th Cir. 2014) (per curiam) (holding district court did not abuse its discretion in declining supplemental jurisdiction where state law tort claims substantially predominated over federal claim); *Hernandez v. Hansell*, No. 614-CV-1351-ORL-22DAB, 2016 WL 8943279, at *10 (M.D. Fla. July 11, 2016) (granting summary judgment on all but plaintiff's § 1983 excessive force claim and declining supplemental jurisdiction over plaintiff's state law claims because those state claims

"involve[d] elements of proof distinctly different" from the federal claim), *aff'd*, 695 F. App'x 523 (11th Cir. 2017) (per curiam); *Muhammad v. City of Tuskegee*, 76 F. Supp. 2d 1293, 1296 (M.D. Ala. 1999) (declining jurisdiction over state law tort claims arising from same conduct that gave rise to § 1983 claim because state law claims substantially predominated over lone federal claim); *see also Cruz*, 2012 WL 6212909, at *3 (collecting cases where courts declined to exercise supplemental jurisdiction where state law claims require different or foreign elements of proof).

Here, the remainder of the McWaters' state law claims, which sound in defamation, are distinct from the sole remaining federal claim regarding the allegedly unconstitutional search of Chris McWaters's cell phone. These particular state law claims involve unique elements that "substantially predominate" over the sole remaining federal claim. Neither judicial economy nor fairness to other litigants support retaining jurisdiction of the McWaters' remaining state law claims.

What's more, the Alabama state courts are best equipped to research and rule on matters of Alabama state law, and comity would suggest that those courts should be permitted to do so. Therefore, this Court declines to exercise supplemental jurisdiction over Counts 6, 7, 8, 10, and 12, and those claims are dismissed without prejudice.

Pursuant to 28 U.S.C. § 1367(d), the McWaters may timely re-file their state law claims in Alabama state court if they so choose. *See, e.g.*, *Weinrib v. Duncan*,

962 So. 2d 167, 169 (Ala. 2007) (tolling statute of limitations on state law claim for 30 days after the federal district court dismissed without prejudice).

## V.     CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** as follows:

(1)     The Motion to Dismiss (Doc. 95) filed by Defendants Randall Houston and Michael Dozier is GRANTED. The claims against these defendants are DISMISSED without prejudice.

(2)     Defendant Facebook, Inc.'s Renewed Motion to Dismiss (Doc. 92) is GRANTED. The claims against this defendant are DISMISSED with prejudice.

(3)     The Renewed Motions to Dismiss (Docs. 93, 94) filed by Defendants April Bruner Webster and P.B. are GRANTED. The claims against these defendants are DISMISSED without prejudice.

(4)     Defendant Ann Marie Bruner's Motion to Dismiss (Doc. 97) is GRANTED. The claims against this defendant are DISMISSED without prejudice.

(5)     Defendant James Talley's Motion to Dismiss (Doc. 100) is GRANTED in part. To the extent Talley seeks to dismiss Chris McWaters's claim that the warrantless search of the cell phone violated his Fourth Amendment rights (Count 1), the motion to dismiss is DENIED. In all other respects, the motion is granted.

(6)  To the extent Defendants Bill Franklin and Investigators Eric Bruner and James Talley seek to dismiss the remaining federal and state law claims against them, their Motion to Dismiss (Doc. 100) is GRANTED.  The state-law defamation claim (Count 7) is DISMISSED without prejudice. The remaining state-law claims (Counts 9, 11, 13, 14, 17, 18, 19, and 22) and federal claims (Counts 2 and 3) against these Defendants are DISMISSED with prejudice.

(7)  To the extent Defendant Adam Bruner seeks to dismiss the unrelated state law claims regarding allegedly defamatory statements made after the arrest in this case, his Motion to Dismiss (Doc. 98) is GRANTED.  To the extent Bruner asserts misjoinder and moves to dismiss based on lack of subject-matter jurisdiction, his Motion for Misjoinder (Doc. 98) is DENIED as moot. The state law claims against this Defendant (Counts 6, 8, 10, and 12) are DISMISSED without prejudice.

(8)  The Plaintiffs' motions for leave to further amend the Amended Complaint (Docs. 106, 111) are DENIED as moot.

(9)  Defendants Randall Houston, the Elmore County District Attorney's Office, Bill Franklin, the Elmore County Sheriff's Office, Eric Bruner, Michael Dozier, the Elmore County Circuit Clerk's Office, April Bruner Webster, Ann Marie Bruner, Mary Thrower, Facebook, Inc., and P.B. are DISMISSED as defendants in this case.

**DONE**, on this the 8th day of February, 2022.

_____/s/ R. Austin Huffaker, Jr._____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE